## Scott v. Jenkins, et al.

(Decided November 18, 1913).

### Appeal from Logan Circuit Court.

Payment.—In this case the evidence examined and conclusion reached that debtor was entitled to a credit not allowed him by the creditor.

I. G. MASON and O'REAR & WILLIAMS for appellant.

S. R. CREWDSON, J. W. LINTON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming in part and reversing in part.

The appellee, W. E. Jenkins, is a highly respected white man, and Lorenzo Scott is a colored man. In November, 1893, Jenkins sold to Scott a house and lot in Adairville for $300, to be paid in the three equal payments, due in one, two and three years. On the note for the first payment of $100 M. E. Orendorff became surety for Scott. The other two notes were not secured except by a lien on the property. In 1911 Scott, claiming that the purchase money had all been paid, brought suit against Jenkins to require him to convey the property

by a deed, which Jenkins obligated himself to make in the writing of 1893 when the purchase money was paid.

In his answer Jenkins set up that Scott owed him $167.60, and further pleaded that in 1905 the land trade of 1893 was canceled by a writing in which Scott acknowledged that he owed $167.60 and agreed to rent the property from Jenkins at a stipulated sum per month. After the case had been prepared for trial, the lower court found that there was a balance due Jenkins, and ordered the property sold to pay the sum found due, and also to pay a debt found to be due R. L. Hayes that will be hereafter noticed.

The account between Scott and Jenkins extended over the long period of years between 1893 and 1905, during which time a number of payments were made by Scott, some of which he claims Jenkins failed to give him credit by. But there is only one of these items that Scott claims credit by that we think it necessary to consider, and that relates to the $100 note secured by Orendorff. Jenkins did not give Scott credit by any sum paid by Orendorff, while Scott claims that he should have credit on the note by $100, paid by Orendorff.

It will be noticed that Orendorff was the surety of Scott on the note due November 14, 1894, for $100. This note was signed by Scott and Orendorff and delivered to Jenkins. Scott testified that in 1894 he raised a crop of tobacco as a tenant on the farm of Orendorff and that when his tobacco was sold Orendorff took out of the proceeds enough to pay the note he was on. He further says that when Orendorff paid off the note he took it in and delivered it to him with the signatures torn off, and Scott filed the note with his deposition.

Jenkins does not deny that the Orendorff note has been paid but he says it was not paid by Orendorff, but by Dr. Townsend. It seems that on December 12, 1906, Dr. Townsend bought some property from Scott for $150, and on that day he paid to Jenkins for Scott the $150. Jenkins says that he applied $119.50 of this $150 as a payment in full of the Orendorff note and credited Scott's other two notes by the remainder, $30.50. Orendorff testifies:

"Q. You took up that note for Mr. Jenkins, did you not? A. I do not remember. The chances are that I paid it, because he raised a crop with me about that time. Q. Scott raised a crop with you during the year 1894? A.

Yes, sir. Q. Didn't you settle that note out of Lorenzo Scott's tobacco crop for 1894 and take it up and charge it to him? A. My books do not show it. I don't remember. My books show that I had an account with him that year and it was settled when the crop was sold and the balance of the proceeds paid over to him. I don't know what disposition I made of it except the account is marked paid. Q. You delivered that note to Scott, didn't you? A. That is my impression. Q. When you delivered that note to Scott didn't you tear your name off of it? A. Yes, sir. Q. Didn't you then in your settlement charge it to Scott's tobacco account? A. I presume so, but my books do not show it." On cross-examination he said: "I am under the impression that I paid him this note for Scott. I just remember, and this note bears me out, that I paid Jenkins $100 and interest for Scott out of his tobacco crop for that year. That is my best impression. That is my best recollection."

Dr. Townsend testifies that when he bought the property from Scott for $150 he paid the $150 to Jenkins for Scott as a payment on the place Scott had bought from Jenkins.

It seems to us this evidence shows in a very satisfactory way that Mr. Jenkins is mistaken in his evidence that the $100 Orendorff note was paid out of the Townsend money and not by Orendorff. In addition to the direct evidence, the circumstances tend strongly to show that Orendorff paid this $100. It is not reasonable to assume that Orendorff would remain as surety on this note for Scott any longer than he had to, or that he would not avail himself of the first opportunity to pay it off and obtain his release as surety. It is also reasonable to assume from the evidence that Orendorff took out of the tobacco money of Scott in 1894 the amount of this note and paid it to Jenkins, taking in his note, which he delivered to Scott after tearing the signatures off. Our opinion is that, in the settlement between Jenkins and Scott, Scott should not be charged with this $100 note Orendorff was on. Jenkins has given him credit by all the other amounts paid except this.

It seems that the board of trustees of the town of Adairville, in which this property is located, passed an ordinance directing the improvement of streets, one of them being the street upon which this property abutted.

The work under this ordinance was done by R. L. Hayes, who in this suit asserts a lien on the lot for the value of his work. He testifies that he did the work under the ordinance and also under an agreement with Scott. Some question is made as to the validity of the ordinance, but if the work was done under an agreement with Scott, it is not material whether the ordinance was valid or not and we shall not take up time discussing that question.

The judgment giving Hayes a lien is affirmed and the judgment in favor of Jenkins is reversed, with directions to the lower court to give Scott credit by the $100 note upon which Orndorff was surety.